**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERY LANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 20 C 6769** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **STRUCTURAL IRON WORKERS** | ) | |
| **LOCAL NO. 1 PENSION TRUST** | ) | |
| **FUND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Following the denial of his application for disability pension benefits, plaintiff, Jeffery

Lane, filed this civil action, claiming that defendant, the Structural Iron Workers Local No. 1

Pension Trust Fund ("the Fund"), violated § 502(a)(1)(b) of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(b). The parties have filed cross-motions for

summary judgment. For the reasons set forth below, the Court grants defendant's motion for

summary judgment and denies plaintiff's.

I.      **Background**

The following facts come from the parties' Local Rule 56.1 statements and the certified

administrative record (ECF No. 13). Based on the parties' Local Rule 56.1 responses, these facts

appear to be undisputed.

Plaintiff has worked as an iron worker at various times over the past thirty years. He is a

member of the Iron Workers Local #1 Union and a participant in the Structural Iron Workers Local

No. 1 Pension Trust Fund. He has earned nine pension credits, where a participant earns a credit

for working one thousand or more hours in covered employment during a calendar year. Defendant

is a multiemployer pension plan administered by a Board of Trustees, which is composed of an equal number of representatives of management and labor. The parties agree that the Board of Trustees are the designated plan administrator under 29 U.S.C. § 1002(16)(A)(i), and they are therefore a fiduciary of the Fund under 29 U.S.C. § 1002(21)(A).

On May 28, 2014, plaintiff tore the meniscus in his left knee and injured his left shoulder while working as an iron worker. Plaintiff applied for and received worker's compensation benefits that year. His meniscus was surgically repaired in July 2014, and he had surgery on his left shoulder in 2015. In June 2016, plaintiff asked Dr. Scott Cordes, his orthopedist, to approve his return to work as a welder if he worked with a partner "in a low impact, nonrepetitive, nonoverhead situation as a 'return-to-work trial.'" (Defs.' LR 56.1 Resp. ¶ 25, ECF No. 28.) Dr. Cordes agreed, and plaintiff attempted on several occasions to resume his career as an iron worker. However, he reinjured his shoulder, and in 2017, he was forced to apply for Social Security Disability Insurance ("SSDI"). Following a lengthy application (and reapplication) process, plaintiff received a Notice of Award letter from the Social Security Administration ("SSA"), which indicated that the SSA found plaintiff to be disabled as of July 1, 2018. This letter did not provide reasons for the decision in any detail.

In August 2019, plaintiff emailed John Gardiner, the Fund's Administrative Manager, to ask how to apply for disability pension benefits. Gardiner instructed plaintiff as follows:

> First, we would need a copy of your complete Social Security Award Letter. Second, was the disability award the result of an on the job injury? If so, which job? If we are unable to tie the exact date of the disability to on the job injury, we will need to know what Social Security based their determination on. This may include medical records Social Security used in making their determination.

(Admin. R. Ex. A, Aug. 19, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 12.) Gardiner explained that, under the terms of the Pension Plan of Structural Iron Workers Local No. 1 Pension

Trust Fund Restated as of January 1, 2014 ("Plan"), given that plaintiff had fewer than fifteen pension credits, plaintiff needed to be able to tie his disability to a specific injury on the job in order to obtain disability benefits.

Plaintiff sent Gardiner the Notice of Award and informed him that he had not received anything describing the reasons for the award in any more detail. Gardiner responded that, since the Notice of Award did not "tie the exact date of the disability to an on the job accident/injury," plaintiff should show "what Social Security based their determination on," including, for example, "medical records Social Security used in making their determination." (*Id.*, Aug. 20, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 4.)

Approximately two weeks later, plaintiff sent Gardiner certain medical records. Gardiner reviewed the records and responded as follows:

> Both of the reports refer to your shoulders . . . . From my review, I do not see any mention of a specific date of injury that we can tie to a job. Are you able to identify the job that these shoulder injuries are from? I will then see if we have any information here in the office regarding the accidents. If we do not, you will have to provide some proof of the job related injury.
>
> In addition to these medical reports, we still need something from Social Security explaining your disability award. Were you determined disabled because of the 2 shoulder injuries? Was it due to the back and neck issues? If so, we need to get some documentation showing that. Sometimes a Determination Letter from Social Security may explain the nature of the disability, but you had previously said you did not receive one.
>
> As I have reviewed your documents, there currently is not enough information to tie the disability to an on the job accident. With the number of credit[s] you have, we must be able to tie the disability award to a job injury. Please see what additional information you can locate and forward to us when you can.

(*Id.*, Sep. 6, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 17.) Plaintiff replied that there "should be a workers comp accident on file from May 28/29, 2014." (*Id.*, Sep. 6, 2019 Email from Pl. to Gardiner, ECF No. 13-1 at 19.) But Gardiner responded that the Fund had no information on

that accident or the worker's compensation claim other than "the record from [the] Illinois Industrial Commission website" that the Fund used "in applying [plaintiff's worker's compensation] credit." (*Id.*, Sep. 6, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 19.) For "'Body Part,'" Gardiner explained, that document listed the "'Whole Body,' not specifically the shoulder, back or neck." (*Id.*)

After another two weeks, Gardiner sent plaintiff a follow-up email to ask if he had been able to obtain any other documentation regarding his disability. Plaintiff responded that he had not because the "determination was made on a combination of factor[s] and not just the . . . accident in May of 2014," so he could not "connect it to a specific event/date." (*Id.*, Sep. 17, 2019 Email from Pl. to Gardiner, ECF No. 13-1 at 25.)

On March 20, 2020, plaintiff emailed Gardiner with "everything [he could] supply" to support his application for disability pension benefits (*id.*, ECF No. 13-1 at 31-32), including his formal application for disability pension benefits and a letter from Dr. Cordes. On his application form, plaintiff circled "yes" to the question, "Did you become totally and permanently disabled as a result of an on-the-job accident in covered employment?" (*Id.*, Ex. B, Application for Retirement Benefits, ECF No. 13-2 at 201.) On the blank for "Date you became disabled," plaintiff wrote, "May 28, 2014." (*Id.*) Dr. Cordes's letter stated as follows, in pertinent part:

> [Plaintiff's] past medical history is significant for several work-related injuries leading to his present status where he is on social security disability. He has been under my care from an injury from May 28, 2014, at which time he tore his meniscus and injured his left shoulder requiring surgical intervention as well. He has also had a previous cervical spine fusion as well as right shoulder injury requiring arthroscopic intervention. All these injuries have been due to work-related events. He is an iron worker. Presently satisfied with the outcome of his right shoulder. His left shoulder still causes his symptoms. He has tried to modify his activities of daily living in an exercise regimen. He is aware possible future arthroscopic intervention may be warranted pending his symptoms. He has been in extensive physical therapy including work hardening and was not ever able to meet

4

the criteria required to be an unrestricted iron worker due to his accident from May 28, 2014.

(Admin. R. Ex. B, Feb. 14, 2020 Cordes Letter, ECF No. 13-2 at 194.) Gardiner acknowledged receipt and responded that he would be in touch after the Fund and its attorney had reviewed the materials.

On April 2, 2020, the Fund denied plaintiff's application for a disability pension. In a letter authored by Sara Herring, the Fund's Pension Manager, the Fund explained that plaintiff was required to "submit evidence showing that [his] disability as determined by Social Security [was] the result of an on-the-job injury." However, the Fund found that he had not done so:

> The Notice of Award Letter does not state the disabling condition that is the basis for determining you are disabled as of July 1, 2018. While Dr. Corde[s]'s letter states that your current disability is due to several work-related injuries, including an injury from May 28, 2014, the information submitted does not provide evidence that Social Security made its determination based on a disabling condition that is the result of the on-the-job accident from May 28, 2014.

(*Id.*, Ex. C, Apr. 2, 2020 Letter, ECF No. 13-3 at 3.)

Attached to this letter were the key provisions of Articles 4 and 7 of the Plan. Article 4 governs disability pensions. Section 4.01 provides that there are two ways a participant can qualify for a disability pension. The first requires the participant to have earned at least fifteen pension credits by the time he becomes totally and permanently disabled. The second requires the participant to have earned at least five pension credits and to have become "totally and permanently disabled as the result of an accident sustained while on the job." (*Id.*, Ex. I, Plan § 4.01(a)(2), ECF No. 13-9 at 25.) A participant qualifies as "totally and permanently disabled" only if he either suffers from a terminal illness or "is entitled to disability payments under the Social Security Act." (*Id.* § 4.03(a), ECF No. 13-9 at 27.)

Article 7 of the Plan governs applications for benefits, claims, and appeals. Under Section 7.03, "Every claimant for benefits shall furnish, at the request of the Trustees, any information or proof reasonably required to determine his benefit rights." (*Id.* § 7.03, ECF No. 13-9 at 55.) Section 7.04 describes the scope of the Trustees' authority as follows:

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case involving the application and interpretation of the Plan, and decisions of the Trustees shall be final and binding on all parties. The Trustees have the discretionary decision making authority to interpret the provisions of this Plan and determine eligibility for benefits. Benefits under this Plan will be paid only if the Trustees decide in their discretion that the applicant is entitled to them.

(*Id.* § 7.04, ECF No. 13-9 at 55.) Section 7.05 requires applicants to include with their applications "all information and evidence the Trustees deem necessary to properly evaluate the merit of the claim and to make any necessary determinations on the claim for benefits." (*Id.* § 7.05(a), ECF No. 13-9 at 56.) If the application is denied, the applicant may file an appeal, and he may "submit additional materials" to support it. (*Id.* § 7.05(c)(2)(i), ECF No. 13-9 at 58.)

Upon receipt of the denial letter, plaintiff immediately emailed Gardiner to inquire about the appeal process. Gardiner responded as follows:

> The information you have provided to date is insufficient to tie your disability to a specific work injury. Your appeal will consist of writing a letter to the Trustees and providing what ever additional information you can put together to support your claim, within 60 days. . . . Keep in mind, you have 1 appeal. You want to gather all pertinent information and then present your case.

(*Id.*, Ex. A, Apr. 2, 2020 Email from Gardiner to Pl., ECF No. 13-1 at 57.) Plaintiff submitted a letter in which he presented his side of the story to the trustees, explaining that, despite several attempts, he had never been able to return to work for any significant length of time since the May 28, 2014 accident. Plaintiff argued that to allow his "return to work trials" to prevent him from recovering disability pension benefits, on the grounds that they tend to obscure whether plaintiff

became disabled as a result of the May 28, 2014 accident or for unrelated reasons thereafter, would be to "penalize[]" him "for not giving up." (*Id.*, Ex. D, Apr. 4, 2020 Letter from Pl. to Trs., ECF No. 13-4 at 3.) With the letter, plaintiff enclosed a letter from an attorney who represented him in his SSDI proceedings, explaining that the Social Security proceedings were directed toward establishing whether plaintiff was disabled on his "Date Last Insured," namely, December 31, 2018, and the fact that they focused on plaintiff's condition in 2018 should not be interpreted to suggest that he became disabled only at that late date. He also submitted a follow-up letter from Dr. Cordes, in which Dr. Cordes purported to "clarify" that, in his earlier letter, when he had stated that plaintiff could not return to work due to his accident of May 28, 2014, he was "relating his current disability back to that date." (*Id.*, May 12, 2020[1] Cordes Letter, ECF No. 13-4 at 5.)

At its June 16, 2020 meeting, the Fund's Board of Trustees decided to procure an "independent medical review" of plaintiff's claim. (*Id.*, Ex. E, Jun. 19, 2020 Letter from Gardiner to Pl., ECF No. 13-5 at 2.) The Fund submitted its file, including plaintiff's medical records, his worker's compensation settlement agreement, his Notice of Award, and the various letters between plaintiff, the Fund, and Dr. Cordes, to the Medical Review Institute of America ("MRIoA"). Dr. Sterling, the assigned MRIoA reviewer, concluded that the documents he had been provided with did not show that the disability for which plaintiff was receiving SSDI benefits was the result of his May 28, 2014 on-the-job injury. According to Dr. Sterling, the SSA had not indicated the basis

---

[1] Plaintiff may have backdated certain documents, or begun drafting them long before he completed and submitted them. For example, his appeal letter is dated April 4, 2020, but it mentions enclosing letters from Dr. Cordes and his Social Security attorney, which are dated May 12 and May 13, respectively. Similarly, his application for pension benefits is dated August 19, 2019, but certain emails in the record between plaintiff, Gardiner, and Herring suggest that plaintiff did not submit this application until March 2020. The exact dates on which plaintiff sent these documents to the Fund is immaterial to the Court's decision; the Court merely notes the potential discrepancy to prevent any confusion.

for its decision, and the medical records he had reviewed identified several other serious ongoing health conditions, in addition to the left shoulder and knee issues that might logically have begun with the May 28, 2014 accident. Plaintiff had also had right shoulder surgery and spinal surgery, and the medical records Dr. Sterling reviewed focused primarily on treatment and physical therapy on the right shoulder—but not the left shoulder. Therefore, the records did not establish that plaintiff's disability was the result of left-shoulder or left-knee problems that might have followed from the May 28, 2014 accident. (*Id.*, Ex. F., Jul. 20, 2020 MRIoA Report, ECF No. 13-6 at 2-3.)

On August 20, 2020, Gardiner sent plaintiff a letter to inform him that the Trustees had denied his appeal. The letter explained that MRIoA had "determined that [plaintiff's] records . . . do not support [that] the Social Security Administration . . . disability finding of July 1, 2018 relates back to the May 28, 2014 injury [plaintiff] sustained while on the job. Specifically, MRIoA found that the records fail to show that the SSA based the disability on the 5/28/14 work injury." (*Id.*, Ex. G, Aug. 20, 2020 Letter from Gardiner to Pl., ECF No. 13-7 at 3 (internal quotation marks omitted).) This civil action followed.

## II.    Standard on Cross-Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary

8

judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court applies these "ordinary standards for summary judgment" in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the Court treats each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

## III.    Discussion

ERISA § 502 provides a cause of action for a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). A district court reviews a denial of benefits challenged pursuant to § 502(a) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan confers discretionary authority on its administrator, the court reviews a denial of benefits under the arbitrary and capricious standard. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017). Under that deferential standard of review, the Court must uphold the administrator's decision "'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision

is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (quoting *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013)). Even this deferential review, however, is not a "rubber stamp," and courts must not "'uphold a [decision] when there is an absence of reasoning in the record to support it.'" *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)) (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003)).

The parties appear to agree that the Plan confers discretionary authority on the Trustees to determine whether applicants are eligible for benefits. They disagree about whether the Trustees exercised their discretion appropriately. Plaintiff argues that the Trustees' decision was arbitrary and capricious because (a) they placed too little weight on Dr. Cordes's letters, without explaining why they discounted Dr. Cordes's opinion in favor of the MRIoA reviewer's, (b) they did not seek additional information to resolve any uncertainty as to whether the record established that the May 28, 2014 accident caused his disability, and (c) they placed too much weight on the absence of any document from the SSA explaining why it had awarded plaintiff SSDI benefits—which, if it was important to them, they could have easily obtained. According to plaintiff, the Trustees should have taken additional actions to gather more information such as contacting plaintiff's employers to determine why he left certain positions, inquiring further into his worker's compensation claim history, contacting Dr. Cordes to better understand the basis for his opinion, or requesting additional documents from the SSDI proceedings, in order to give plaintiff's claim the full and fair review it deserved.

Defendant argues that the Court must uphold the Trustees' decision because it was based on a reasonable interpretation of the Plan documents and well-grounded in the evidence. In particular, defendant argues, (a) it was not unreasonable for defendant to rely on the opinion of the MRIoA reviewer, Dr. Sterling, rather than Dr. Cordes's letters, (b) it was not defendant's responsibility to obtain the evidence necessary to support an award of disability pension benefits to plaintiff, and (c) the Trustees properly considered the record in the absence of an SSA determination letter—and even if they had been able to consider evidence of the Social Security proceedings that was not before them, the SSA decision does not help plaintiff.

## A. Whether the Trustees' Interpretation of Dr. Cordes's Letters Was Unreasonable

Plaintiff argues that it was unreasonable for the Trustees to rely on the MRIoA review and reject Dr. Cordes's letter because a plan administrator may not "refuse arbitrarily to credit [a disability claimant's] reliable evidence, including the opinions of her treating physicians." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 994 (N.D. Ill. 2003). According to plaintiff, the Trustees rejected Dr. Cordes's opinion out of hand, without articulating a valid reason for doing so, and therefore acted arbitrarily and capriciously.

The Court disagrees with plaintiff because "it is possible to offer a reasoned explanation, based on the evidence," for the Trustees' decision in this regard. *See Rabinak v. United Bhd. of Carpenters Pension Fund*, 832 F.3d 750, 754 (7th Cir. 2016) (internal quotation marks omitted). What plaintiff needed to prove to the Fund and the Trustees was that he had become "totally and permanently disabled as the result of an accident sustained while on the job." (Admin. R. Ex. I, Plan § 4.01(a)(2), ECF No. 13-9 at 25.) "[T]otally and permanently disabled," as relevant here, means that he is "entitled to disability payments under the Social Security Act." (*Id.* § 4.03(a), ECF No. 13-9 at 27.) The Fund interpreted this language to mean that plaintiff must prove that (a)

he suffered a disabling injury that entitled him to SSDI, and (b) he suffered the injury in an on-the-job accident. (*See id.*, Ex. C, Apr. 2, 2020 Letter, ECF No. 13-3 at 3 ("While Dr. Corde[s]'s letter states that your current disability is due to several work-related injuries, including an injury from May 28, 2014, the information submitted does not provide evidence that Social Security made its determination based on a disabling condition that is the result of the on-the-job accident from May 28, 2014.")). Because the Fund has discretionary authority to interpret the Plan, the Court owes this interpretation deference. *See Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013).

The trouble with Dr. Cordes's letters, from the Fund's point of view, is that they do not address the correct question and, to the extent they do, they do so only conclusorily. In his February 2020 letter, Dr. Cordes refers to "several work-related injuries" and accompanying health issues, in addition—and unrelated—to the left knee and left shoulder problems that began with the May 2014 accident, including a "cervical spine fusion" and "right shoulder injury requiring arthroscopic intervention." (*Id.*, Ex. B, Feb. 14, 2020 Cordes Letter, ECF No. 13-2 at 194.) The closest he comes to stating that one of the injuries caused by the May 2014 accident resulted in plaintiff's disability is stating that plaintiff's "left shoulder still causes his symptoms." (*Id.*) But he does not elaborate on the term "symptoms"; he simply concludes that, despite extensive physical therapy, plaintiff has never been able to "to meet the criteria required to be an unrestricted iron worker" since his May 2014 accident. (*Id.*) Dr. Cordes's short, three-line May 2020 letter essentially reiterates this conclusion, stating that "when [he] stated that Mr. Lane could not return to his work due to his accident of May 28, 2014," he intended to "relat[e] [plaintiff's] current disability back" to the May 2014 accident. (*Id.*, Ex. D, May 12, 2020 Cordes Letter, ECF No. 13-4 at 5.)

12

So, Dr. Cordes's letter establishes that plaintiff still suffers left-shoulder "symptoms" and, in Dr. Cordes's opinion, plaintiff has been unable to work as an iron worker since the May 2014 accident. But whether plaintiff can work as an iron worker is not the critical question that the Fund needed plaintiff to answer. Again, what plaintiff needed to prove was that, as a result of the May 2014 accident, plaintiff became totally and permanently disabled such that he is entitled to SSDI benefits. On their face, Dr. Cordes's letters do not even purport to opine on which injuries caused plaintiff's disability to reach that level of severity, or indeed whether his disability is that severe at all; Dr. Cordes stated only that, since plaintiff has been under his care, plaintiff has never been able to return to work as a regular iron worker.

Further, even if establishing that plaintiff is unable to return to work as an iron worker were enough, Dr. Cordes did not make clear that the injuries sustained in the May 2014 accident are precisely the cause of that disability. Dr. Cordes stated that plaintiff has had intervening procedures in the years since the accident—namely, the cervical spine fusion and the right shoulder surgery— and he did not state the degree to which these other issues may have contributed to plaintiff's inability to "meet the criteria required to be an unrestricted iron worker." True, Dr. Cordes stated that either he or plaintiff is "[p]resently satisfied with the outcome of [plaintiff's] right shoulder," but he also stated that "possible future arthroscopic intervention may be warranted pending his symptoms," and it is not clear whether this relates to the right shoulder (which has already undergone an "arthroscopic intervention"), the left shoulder, or both.

Given this evidence, the applicable Plan language, and the discretion the Plan gives the Trustees to interpret the Plan and determine eligibility for benefits, the Trustees were entitled to seek a closer "causal link" between plaintiff's total and permanent disability and the May 28, 2014 accident. *See Cerentano*, 735 F.3d at 981. In *Cerentano*, the plan language was similar to the

language in this case: the plan provided that a participant "who becomes totally disabled as a result of a mine accident . . . shall . . . be eligible for a pension while so disabled," and a participant "shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance benefits." The Seventh Circuit explained that "[t]he phrases 'as a result of' and 'by reason of' do not establish how closely connected the mine accident(s) must be to the disability." *Id.* In such circumstances, "the trustees' 'interpretation . . . is entitled to deference.'" *Id.* (quoting *Tompkins*, 712 F.3d at 1002). Similarly here, the Plan states that a participant must become "totally and permanently disabled as the result of an accident sustained while on the job" (Admin. R. Ex. I, Plan § 4.01(a)(2), ECF No. 13-9 at 25.), which does not establish how closely connected the accident must be to the disability. But the Plan also states that the Trustees are the "sole judges of the standard of proof required," and it gives them discretion to interpret the Plan and determine eligibility. (*Id.*, § 7.04, ECF No. 13-9 at 55.) So, having been handed a "medical [opinion] of questionable reliability," *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 578 (7th Cir. 2006), which had limited probative value on the key factual issues at play, the Trustees, "as sole judges of the standard of proof required," were entitled to conclude that Dr. Cordes's letter did not satisfy the requisite standard of proof and to probe further to determine whether there was a real causal link between plaintiff's total and permanent disability and the May 28, 2014 accident. It follows that the Fund was entitled to seek an independent review of the medical records underlying Dr. Cordes's opinion in an effort to better understand plaintiff's condition and its relationship to the May 28, 2014 accident.

Dr. Sterling, the MRIoA reviewer, undertook a review of all the materials plaintiff had submitted, including extensive medical records documenting his physical therapy and other medical appointments in 2018, around the time of his Social Security determination. He concluded

14

that these materials did not show that the injuries to the left shoulder or left knee, as opposed to the right shoulder or spine, were the cause of plaintiff's total and permanent disability. The Trustees relied on these findings to deny plaintiff's appeal, and, given the deference the Court owes to the Trustees' decision, the Court cannot dismiss this decision as "downright unreasonable." *Davis*, 444 F.3d at 576 (internal quotation marks omitted); *see id.* at 577 (not unreasonable for plan administrator to rely on records review rather than opinions of treating physicians); *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 324-25 (7th Cir. 2007) (plan administrator was entitled to seek independent review and accept the reviewer's conclusion, "so long as [he] provided a non-arbitrary explanation for his conclusion," which explained his "departure from previous doctors' opinions"); *see also O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 963 (7th Cir. 2001) (explaining that plan administrator acted reasonably by seeking specialized input and distinguishing *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 476 (7th Cir. 1998) *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)); *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 532 (7th Cir. 1986) (certain physicians' reports constituted substantial evidence supporting denial of claim, despite "countervailing" physicians' reports).

This case is not like the case plaintiff cites, *Crespo v. Unum Life Insurance Company of America*, 294 F. Supp. 2d at 994, because the Trustees did not "refuse arbitrarily to credit [plaintiff's] reliable evidence, including the opinions of her treating physicians." In this case, the opinion of Dr. Cordes was not "reliable evidence" that plaintiff had become totally and permanently disabled and entitled to SSDI benefits as a result of the May 2014 accident. At most, it was evidence that plaintiff had not been able to return to work as a regular iron worker since May 2014; Dr. Cordes did not explain why the injuries he suffered in that accident, rather than his

right-shoulder or spinal injuries, were what made him disabled. Given how scant Dr. Cordes's explanation was, the Trustees were entitled to want another doctor to look at the "objective evidence." *Dreyer v. Metro. Life Ins. Co.*, 459 F. Supp. 2d 675, 683 (N.D. Ill. 2006) (citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994), *disapproved of on other grounds by Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635 (7th Cir. 2005)) ("Without objective evidence [such as underlying medical records] supporting the conclusion that claimant's mental or physical condition constitutes a disability under a benefit plan, defendants' determination is not arbitrary or capricious on the basis of unsubstantiated conclusory statements made by claimant's doctors."); *see also Davis*, 444 F.3d at 569 (citing *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)) (characterizing treating physician as "more [of] an advocate than a doctor rendering objective opinions"). Further, the mere fact that the Trustees sought an independent review at all tends to suggest that the Trustees' decision was not arbitrary and capricious—unlike in *Crespo*,[2] where the court reasoned that the decision was arbitrary and capricious in part because the plan administrator *did not* seek an independent medical examination. 294 F. Supp. 2d at 995-96 (citing *Donato*, 19 F.3d at 382) ("Seeking independent expert advice is evidence of a thorough investigation, and reliance upon independent experts generally insulates the fiduciary from judicial reversal.").

Plaintiff is correct that a plan administrator may not "engage[] in only a selective presentation of the evidence in the record, focusing on the portions that will support a denial of the claim and ignoring or misrepresenting the facts that could demonstrate the disability." *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 441 (7th Cir. 2019). But that is not what happened here. The Trustees did not ignore Dr. Cordes's letters; they simply found them less probative of

---

[2] This case is unlike *Crespo* for numerous other reasons as well, as defendant amply explains, although the Court need not trace all the differences here. (Def.'s Combined Resp./Reply Mem. at 9-10, ECF No. 27.)

the key factual questions than plaintiff believes they were, so the Trustees sought further evidence in the form of an independent medical review. Because there is substantial support for the Trustees' interpretation in the record, their decision was not arbitrary and capricious on this ground.

## B. Whether the Trustees Were Required to Seek Additional Information

Plaintiff argues that, even if it was not unreasonable for defendant to find Dr. Cordes's letters wanting, defendant should have reached out to Dr. Cordes to better understand the basis of his opinion or otherwise sought additional information about plaintiff's condition, rather than simply deny his claim for lack of evidence.

Defendant argues in response that it was plaintiff's burden to prove his entitlement to benefits and defendant had no obligation to seek out additional information, if plaintiff failed to provide enough evidence to satisfy the Trustees. Although the Plan language and ERISA § 503 imposed on defendant somewhat greater responsibility for working with plaintiff to get to the bottom of things than defendant lets on,[3] the Court agrees with defendant that the Trustees were not required to do more than they did here, under the circumstances.

The Plan places the primary burden of proof on claimants, but it also envisions a role for the Trustees in shaping the record. According to the Plan, a claimant must "furnish, *at the request of the Trustees*, any information or proof reasonably required to determine his benefit rights," and he must provide "all information and evidence [that] *the Trustees deem* necessary to properly

---

[3] On this point, defendant cites *Dorris v. Unum Life Insurance Company of America*, 949 F.3d 297, 304 (7th Cir. 2020), in which the Seventh Circuit stated, "The plaintiff is the one who is obligated to prove she is entitled to benefits, so any gaps in the record cut against her claim." But defendant takes this statement out of context. The court was explaining why disability claimants seeking district-court review of an adverse administrative decision subject to *de novo* review are permitted to submit additional evidence. But here, defendant's decision is not subject to *de novo* review; the Court must uphold defendant's decision unless it is arbitrary and capricious. *Dorris* is inapposite.

evaluate the merit of the claim and to make any necessary determinations on the claim for benefits." (Admin. R. Ex. I, Plan, §§ 7.03, 7.05, ECF No. 13-9 at 55-56 (emphasis added).)

This Plan language is consistent with ERISA § 503, 29 U.S.C. § 1133(b), which requires employee benefit plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Courts have interpreted this provision to demonstrate that "ERISA does not envision that the claims process will mirror an adversarial proceeding where 'the [claimant] bear[s] almost all of the responsibility for compiling the record, and the [fiduciary] bears little or no responsibility to seek clarification when the evidence suggests the possibility of a legitimate claim.'" *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) (quoting *Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792, 807 (10th Cir. 2004), and citing *Quinn*, 161 F.3d at 476). Instead, ERISA requires, "where necessary, some back and forth between administrator and beneficiary." *Harrison*, 773 F.3d at 21. "An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter," often by engaging in a "meaningful dialogue" with the claimant, in the way that "civilized people communicate with each other regarding important matters." *Gaither*, 394 F.3d at 807-08 (internal quotation marks omitted). A plan administrator may not simply "shut his eyes to the most evident and accessible sources of information that might support a successful claim." *Harrison*, 773 F.3d at 21.

But substantial—rather than strict—compliance with the "core requirements" of the full-and-fair-review requirement of 29 U.S.C. § 1133 is sufficient. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992) (internal quotation marks omitted), *see Williams*, 509 F.3d at 324-25; *see also Siebert v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 496 F. Supp. 3d 1152, 1163-64 (N.D. Ill. 2020) (citing cases). In keeping with that general principle, the "meaningful

18

dialogue" rule "is one of reason." *Harrison*, 773 F.3d at 22. "[P]lan administrators possess limited resources, and . . . there are practical constraints on their ability to investigate the volume of presented claims." *Id.* They need not "scour the countryside in search of evidence to bolster a petitioner's case." *Id.* For example, when the key evidence consists of "medical or personal records" that are in the possession of the claimant, and the claimant "simply fails to provide them," the plan administrator is not necessarily at fault if it proceeds to rule against the claimant for lack of evidence supporting his claim. *See Boysen v. Illinois Tool Works Inc. Separation Pay Plan*, 767 F. App'x 799, 811 (11th Cir. 2019); *Dreyer*, 459 F. Supp. 2d at 684 ("In light of defendants' many requests for additional information [including recent medical documentation], it is to Dreyer's detriment that she did not submit evidence that she was unable to perform the essential functions as an administrative assistant."). "[T]he primary responsibility for providing medical evidence to support a claimant's theory rests with the claimant." *Harrison*, 773 F.3d at 24.

Here, the record shows that defendant engaged in the meaningful dialogue necessary to substantially comply with the full-and-fair-review requirement, and it did not shut its eyes to any obvious sources of proof. Gardiner corresponded diligently with plaintiff to inform him of what information plaintiff needed to gather and submit in order to obtain disability pension benefits. In his August 19, 2019 email, Gardiner informed plaintiff that he would need to submit information that permitted the Fund to "tie the exact date of the disability to on the job injury" or else to demonstrate "what [evidence] Social Security based their determination on," including "medical records." (Admin. R. Ex. A, Aug. 19, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 12.) The following day, after plaintiff had sent his Notice of Award, Gardiner informed plaintiff that since that document did not "tie the exact date of the disability to an on the job accident/injury," plaintiff would need to show "what Social Security based their determination on," including, for example,

"medical records Social Security used in making their determination." (*Id.*, Aug. 20, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 4.) Plaintiff submitted additional information, and on September 6, 2019, Gardiner responded he did not "see any mention of a specific date of injury that [the Fund] can tie to a job," he did not see any "documentation" sufficient to show why the SSA had determined that he was disabled ("Were you determined disabled because of the 2 shoulder injuries? Was it due to the back and neck issues?"), and the bottom line was that "there [was] not enough information to tie the disability to an on the job accident." (*Id.*, Sep. 6, 2019 Email from Gardiner to Pl., ECF No. 13-1 at 17.) Two weeks later—on his own initiative— Gardiner followed up to ask if plaintiff had obtained additional information. After the Fund denied plaintiff's application, Gardiner emailed plaintiff to inform him again that the information he had provided to that point, including Dr. Cordes's February 2020 letter, was "insufficient to tie [his] disability to a specific work injury." (*Id.*, Ex. A, Apr. 2, 2020 Email from Gardiner to Pl., ECF No. 13-1 at 57.) If he wanted to appeal to the Board of Trustees, Gardiner explained, plaintiff should "provid[e] what ever [*sic*] additional information [he could] put together to support [his] claim," and "[k]eep in mind" that this was his only opportunity to appeal, so he should "gather all pertinent information and . . . present [his] case." (*Id.*). Based on these repeated warnings, plaintiff was sufficiently informed about what sort of information the Fund and, ultimately, the Trustees wanted him to provide. If he did not provide it, he can hardly blame the Fund.

Plaintiff suggests that it was not enough for the Fund to inform plaintiff that he had to submit more information to tie his disability to a specific on-the-job accident; rather, according to plaintiff, the Fund was required to take the additional step of gathering more information by, for example, contacting Dr. Cordes—through Gardiner or the Trustees—to better understand the basis for his opinion. But in the circumstances of this case, the Court fails to see why a full and fair

review required the Trustees to seek further information from Dr. Cordes or any other source, such as plaintiff's former employers, worker's compensation claims handlers, or the SSA. Gardiner repeatedly informed plaintiff that he should provide medical records to tie his disability to an on-the-job accident, and plaintiff provided Dr. Cordes's letters and extensive medical records documenting his treatment and therapy in 2018. So, the Trustees had received Dr. Cordes's input, and they had medical records of plaintiff's treatment in 2018, in the time period surrounding his SSDI proceedings. This was information of the kind that they needed: facts about plaintiff's condition, particularly in 2018, so that they could determine whether the total and permanent disability the SSA found in 2018 was "the result of" the left knee and left shoulder injuries he suffered in the May 2014 on-the-job accident. Plaintiff has not explained, and the Court fails to see, particularly given Gardiner's repeated warnings, why the Trustees were not entitled to expect that the evidence plaintiff provided was the best evidence on which to determine whether plaintiff's claim would stand or fall. *See Dreyer*, 459 F. Supp. 2d at 683 (citing *Donato*, 19 F.3d at 382). Further, to the extent they needed help interpreting the records, they *did* seek it out by referring the case to MRIoA for an independent medical review. To require more from them would be to require them to "go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence exists." *Gaither*, 394 F.3d at 804.

This case is not like those cited above, in which the plan administrators had some suggestion that a treating physician had relevant evidence that was missing from the record, knew how to contact the physician, and simply did not do so. *Cf. Harrison*, 773 F.3d at 23; *Gaither*, 394 F.3d at 806. Nor is it one in which "the plan administrator was in a much better position" to obtain and assess any information necessary to get to the bottom of things. *Cf. Boysen*, 767 F. App'x at 811 (plan administrator was better able to "identify and review [critical] internal information about

21

any restructuring at [claimant's employer]," so case was unlike the "typical benefits case in which the claimant has the necessary medical or personal records in his possession and simply fails to provide them").

The Trustees had substantial evidence before them, in the form of plaintiff's medical records and Dr. Sterling's MRIoA opinion, to support their decision. *See Davis*, 444 F.3d at 576-77, *Williams*, 509 F.3d at 324-25, *O'Reilly*, 272 F.3d at 963. Under the circumstances of this case, they were entitled to rely on the evidence before them, rather than "scour the countryside" for additional evidence, *Harrison*, 773 F.3d at 22, when it had not been "not been brought to their attention that such evidence exists," or, if it existed, that it would be material to their review. *Gaither*, 394 F.3d at 804. Because there is substantial support for the Trustees' decision, and it is possible to offer a reasoned explanation for it based on the evidence, the decision was not arbitrary and capricious on this ground.

### C. Whether the Trustees Placed Too Much Weight on Absence of SSA Reasoning

Plaintiff makes two arguments based on the relevance of the SSDI proceedings. The first is that the Trustees erred to the extent that they reasoned that plaintiff's claim failed because he had not proven that injuries sustained in the May 28, 2014 accident were what the SSA relied on in determining that plaintiff was entitled to SSDI. According to plaintiff, the Plan does not require any such proof. The second argument is that the record of plaintiff's SSDI proceedings, including the SSA's disability determination, provide additional evidence that plaintiff's disability was due to the left shoulder injury, and, if the Trustees believed it necessary to their review, they should have attempted to obtain it.

The undisputed facts do not support either of these arguments. First, in suggesting that the Trustees required plaintiff to prove that the SSA relied on the May 28, 2014 accident in

determining that plaintiff was entitled to SSDI benefits, plaintiff misreads their decision. What defendant has sought for plaintiff to prove throughout this process is that he became totally and permanently disabled—*i.e.*, entitled to SSDI benefits—as the result of a work-related injury. The Trustees did not deny plaintiff's application and appeal because he did not prove that the SSA articulated the May 28, 2014 injury as the cause of his disability; they denied his application because plaintiff did not *either* (a) establish that the SSA found that the injuries sustained in the May 28, 2014 accident were the cause of his disability, *or* (b) adduce other evidence establishing that the May 28, 2014 accident was the cause of his total and permanent disability. That was the point of seeking the MRIoA review—it was not clear what the SSA had based its determination on, so the Trustees had to determine whether other evidence, separate from the SSA determination, showed that plaintiff had become disabled as a result of the May 28, 2014 accident. The Trustees concluded that the evidence did not establish a close enough link between the May 28, 2014 accident and plaintiff's inability to work in 2018, and, as the Court has explained, that conclusion was not "downright unreasonable."

As for the second argument, the Court has already explained at length that it finds no error in the Trustees' failure to seek additional information beyond what plaintiff provided them with. Additionally, as defendant correctly argues, it would be improper to consider the substance of the record of plaintiff's SSDI proceedings when that information was not before the Trustees. "Deferential review of an administrative decision means review on the administrative record," *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999), barring some showing of bias or a grave conflict of interest, *Geiger*, 195 F.3d at 365, which

is not present here.[4] And finally, even if the Court were to consider the SSDI decision and other documents from the SSDI proceedings here, as plaintiff urges, plaintiff does not explain, and the Court fails to see, how this evidence is meant to have helped plaintiff. Plaintiff has not adduced evidence in the SSDI proceedings that pointed clearly toward plaintiff's left shoulder or left knee as the cause of his disability. As plaintiff freely admits, the SSA had no need to determine whether plaintiff's disability related back to the May 2014 accident, and its decision sheds little light on the question. (*See* Pl.'s LR 56.1 Stmt. Ex. 1, Jun. 25, 2019 Order of Admin. Law J., ECF No. 24-2.) In fact, like Dr. Cordes's letter, the written decision mentions numerous other health problems from which plaintiff suffers, all or many of which apparently contributed to the determination that plaintiff is disabled, so the decision muddies rather than clarifies the waters. (*Id.*) Plaintiff was told to submit the medical records underlying the SSA determination, if he could not submit direct evidence of the SSA's reasoning, and he submitted extensive medical records. Plaintiff has not explained, and the Court does not see, why the written SSA decision was better evidence of his true medical condition or of the merit of his claim. His application received "effective review" even without this evidence. *See Siebert*, 496 F. Supp. 3d at 1164-66 (citing cases).

The undisputed facts show that the Trustees' decision was supported by substantial evidence, it was not clearly erroneous, and it is possible to offer a reasoned explanation for the outcome the Trustees reached. Therefore, there is no genuine issue of material fact as to whether defendant's decision was arbitrary and capricious, and summary judgment is appropriate in defendant's favor and against plaintiff.

---

[4] The Court reiterates that the Fund is a multiemployer pension plan administered by a Board of Trustees that is composed of an equal number of representatives of management and labor. In such circumstances, there is no inherent danger of a structural conflict of interest. *See Rabinak*, 832 F.3d at 755 (citing *Manny v. Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004)).

**IV.    Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion [24] for summary

judgment and grants defendant's motion [17] for summary judgment.  Civil case terminated.

**SO ORDERED.**                                    **ENTERED:   December 30, 2021**

**HON. JORGE ALONSO**
**United States District Judge**